## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAMILLE Y. MCKINNEY, *et al.*, | * | |
| Plaintiffs, | * | |
| | | Civil Action No. 8:22-cv-02878-PX |
| v. | * | |
| TOWD POINT MORTGAGE TRUST ASSET-BACKED SECURITIES, SERIES 2016-1, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, *et al.*, | * | |
| | * | |
| | * | |
| Defendants. | | |
| | * | |

***

## <u>MEMORANDUM OPINION</u>

Pending in this consumer lending case is a motion to dismiss for failure to state a claim filed by Defendants Towd Point Mortgage Trust 2016-1, U.S. Bank National Association as Indenture Trustee ("Towd") and Select Portfolio Servicing, Inc. ("SPS") (collectively, "Defendants"). ECF No 4. The issues are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, Defendants' motion to dismiss is GRANTED.

### I.      Background

The Court construes the Complaint as true and most favorably to the Plaintiffs. The Court also considers the public records attached to Defendants' motion to dismiss.[1]

---

[1] This Court may take judicial notice of matters of public record without converting this motion to dismiss into one for summary judgment. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The promissory note, Deed of Trust, assignments of the Deed of Trust, and Appointment of Substitute Trustees attached to Defendants' motion to dismiss are recorded in the Land Records of Prince George's County and so, as public records integral to the Complaint, the Court will consider them. Plaintiffs have also attached a purported "expert" report. *See* ECF Nos. 1-1 & 1-2. The report includes largely non-specific boilerplate recitations of various laws pertaining to secured loans. The only plausible "fact" included within the report, which the Court will accept as true solely for purposes of this motion, is that the Defendants failed to disclose certain documents as required under various mortgage laws. ECF No. 1-2 at 9; *see also Philips*, 572 F.3d at 180.

On June 2, 2006, Plaintiffs obtained a home mortgage loan (the "Loan") for $209,600 from Pinnacle Financial Corporation ("Pinnacle") to finance the purchase of real property located at 3910 Walls Lane, Suitland, MD 20746. ECF No. 5-1 at 2. The Loan was evidenced by a promissory note (the "Note"), *id.*, and secured by a Deed of Trust, executed on the same date as the Note, and recorded among the Land Records of Prince George's County, Maryland, ECF No. 5-2 at 24. The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS") the beneficiary under the security interest as the nominee for the lender, Pinnacle, its successors, and assigns.[2] *Id.* at 2.

In executing the security instrument, Plaintiffs agreed that "MERS holds only legal title to the interests granted by Borrower in this Security Instrument but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." *Id.* at 6.

The first paragraph of the Note makes clear that the "Lender may transfer this Note," and advises that the "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" ECF No. 5-1 at 1. Similarly, the Deed of Trust states that "the Note . . . can be sold one or more times without prior notice to Borrower,"

---

[2] MERS is a corporation established in the mid-1990s to eliminate the need to record assignments and related documents in county property recorder's offices. Before MERS, recording the assignment of the mortgage in the local land records made buying and selling mortgage-backed loans a tedious process. *See Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1073 (R.I. 2013) ("The MERS® System was developed to bring efficiency and order to this increasingly complex industry."). MERS created a computer database that tracks servicing and ownership rights of mortgage loans. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1361 (2010). Mortgage lenders often list MERS as the "mortgagee of record" on the paper mortgage rather than the lender. *Id.* MERS remains the mortgagee for the life of a mortgage loan even after the original lender or a subsequent assignee transfers the loan. *Id.* at 1361–62.

and explains that the sale may result in a change of the loan servicer that collects payments.  ECF
No. 5-2 at 14.

There is an unbroken, but rather complex, chain of title from Pinnacle (via MERS) to
Towd.  First, on June 23, 2015, Plaintiffs' Note was pooled with several other notes into a
securitization trust, and an Assignment of Mortgage/Deed of Trust from Fifth Third Mortgage
Company to Towd Point Master Funding Trust 2015-LM4 was recorded in the Prince George's
County Land Records (the "First Assignment").  ECF No. 5-3.  As the Maryland Court of
Appeals has explained:

> [s]ecuritization starts when a mortgage originator sells a mortgage and its note to a
> buyer, who is typically a subsidiary of an investment bank.  The investment bank
> bundles together the multitude of mortgages it purchased into a "special purpose
> vehicle," usually in the form of a trust, and sells the income rights to other investors.
> A pooling and servicing agreement establishes two entities that maintain the trust:
> a trustee, who manages the loan assets, and a servicer, who communicates with and
> collects monthly payments from the mortgagors.

*Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 718 (2013) (quoting *Anderson v.
Burson*, 424 Md. 232, 237 (2011)).

Next, on July 8, 2016, an Assignment of Mortgage/Deed of Trust from Towd Point
Master Funding Trust 2015-LM4 to FirstKey Mortgage, LLC, was recorded (the "Second
Assignment").[3]  ECF No. 5-4.  Then, on January 25, 2017, a Gap Assignment effective
immediately prior to the First Assignment was recorded, clarifying that MERS, acting as
nominee for Pinnacle,[4] had granted all beneficial interest under the Deed of Trust to Fifth Third
Mortgage Company before the First Assignment.  ECF No. 5-5.  And finally, on June 16, 2020, a

---

[3] A Corrective Corporate Assignment of Deed of Trust was recorded on December 9, 2021 "to correct the
original lender and add the second borrower on [the Second Assignment]."  ECF No. 5-8.
[4] A Corrective Corporate Assignment of Deed of Trust was recorded on December 9, 2021 "to correct the
original lender, the assignor name and add the second borrower on the gap assignment."  ECF No. 5-7.  This
assignment clarified that MERS was acting as nominee for Pinnacle, not Fifth Third Mortgage Company.  *See id.*

3

Corporate Assignment of Deed of Trust from FirstKey Mortgage, LLC to Towd was recorded. ECF No. 5-6.

On August 18, 2022, Towd, by SPS as its attorney-in-fact, recorded an appointment of Substitute Trustees.  ECF No. 5-13.  On September 8, 2022, Defendants sent Plaintiffs a "Notice of Foreclosure Action" through the Substitute Trustees.  ECF No. 1 ¶ 6.  On November 7, 2022, Plaintiffs filed this lawsuit against Towd and SPS.  ECF No. 1.

Plaintiffs centrally aver that Defendants lack "authority" to foreclose on the Property. ECF No. 1 ¶¶ 11, 19–21.  Specifically, Plaintiffs challenge the chain of title associated with the Note, and "demand that Defendants establish the entire chain of agency, from inception of the note up to the current alleged holder."  *Id.* ¶ 20.  From this, Plaintiffs allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e (Count One), negligence (Count Two), fraud in the concealment (Count Three), and slander of title (Count Four).  *Id.* ¶¶ 40–87. Plaintiffs also seek declaratory relief (Count Five) and rescission for, among other things, violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (Count Six).  *Id.* ¶¶ 88–102.  Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 4.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555)).  The Court must be able to deduce "more than the mere possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief.  *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

Furthermore, since Plaintiffs allege fraud, *see* ECF No. 1 ¶¶ 61–75, they are held to the heightened pleading standard of Rule 9(b), "which requires that claimants plead fraud with particularity."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999).  Under this Rule, Plaintiffs must state "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Id.* at 784 (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).  A "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)."  *Id.* at 783 n.5.

The Court recognizes that Plaintiffs proceed pro se, and so will construe the Complaint liberally to allow for the development of a potentially meritorious case; but the Court cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *Compare Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (explaining that pro se complaints are not held to the same pleading standard as those prepared by lawyers) *with Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### III.    Analysis

Plaintiffs' individual claims arise from a set of common legal theories.  Plaintiffs allege, for example, that the securitization of their mortgage loan amounts to fraud because Defendants somehow hid the securitization from Plaintiffs and that securitization itself effectively "[c]hang[ed] the character" of Plaintiffs' loan.  ECF No. 1 ¶¶ 63–64.  Plaintiffs further allege, without elaboration, that securitization had "a materially negative effect" on them.  *Id.* ¶ 64.  But the theory that securitization alone renders a note and Deed of Trust unenforceable has been "entirely discredited" and uniformly rejected.  *See Gale v. Select Portfolio Servicing, Inc.*, No. DKC 20-1289, 2021 WL 165132, at *3 (D. Md. Jan. 19, 2021); *Mancho v. Select Portfolio Servicing, Inc.*, No. 22-02025-JRR, 2023 WL 2035928, at *3 (D. Md. Feb. 16, 2023) ("[T]o the extent Plaintiff seeks to be released from her obligations under the Promissory Note based on the securitization of the mortgage, her claim fails as a matter of law.").  "Securitization creates a separate contract distinct from a borrower's debt obligations under a promissory note and does not alter the rights or obligations of the parties[] vis-à-vis the underlying debt."  *Mancho*, 2023 WL 2035928, at *3.  Securitization, in short, is "not some sort of illicit scheme that taints the underlying debt," *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014).  Therefore, as a matter of law, the securitization process cannot have harmed Plaintiffs or give rise to a cause of action.

Relatedly Plaintiffs allege that Defendants have not established their "authority" to foreclose on the property and demand "strict verified proof . . . that Defendants are the singular and true holder" of the Note.  ECF No. 1 ¶¶ 16–20, 28–31.  This Court has consistently held that non-parties to assignments lack standing to challenge the legality of the assignments.  *See, e.g.*,

*Mancho*, 2021 WL 165132, at *4; *Jaigobin v. U.S. Bank, NA*, No. DKC 18-1776, 2019 WL 4598000, at *4 (D. Md. Sept. 23, 2019), *aff'd sub nom.*, 797 F. App'x 776 (4th Cir. 2020).  In the consumer lending context, a party "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties."  *Wolf v. Fed. Nat'l Mortgage Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam) (citation and internal quotation marks omitted).

Here, Plaintiffs were not a party to any of the assignments.  Nor were they intended beneficiaries of these assignments.  Thus, Plaintiffs cannot challenge the assignments' validity. *See Wolf,* 512 F. App'x at 342 (holding that a mortgagor lacks standing to challenge the propriety of the assignment of the note); *Quattlebaum v. Bank of Am., N.A.*, No. TDC-14-2688, 2015 WL 1085707, at *4 (D. Md. Mar. 10, 2015) ("What the lender chooses to do with that entitlement—whether to keep it or to sell it to another financial institution—is a decision [the plaintiff] has no standing to challenge.").  The intervening assignments do not affect Plaintiffs' rights in that, regardless of their validity, Plaintiffs "still ha[ve] an obligation under the note to make payments." *Wolf*, 512 F. App'x at 342.  Accordingly, and as more fully explained below, none of Plaintiffs' claims survive dismissal.

### A.      FDCPA Claim (Count One)

Plaintiffs allege that Defendants violated the FDCPA "by mailing a dunning letter by U.S.P.S. to the Plaintiffs which asked for United States Currency as payment for an alleged debt owed."  ECF No. 1 ¶ 41.  Plaintiffs aver that this letter included "false and misleading information" amounting to an FDCPA violation.  *Id.*

"The FDCPA safeguards consumers from abusive and deceptive debt collection practices by debt collectors," *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 500 (D. Md.

2004).  To make plausible an FDCPA claim, a Complaint must aver sufficient facts to show "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Bolden v. McCabe, Weisberg & Conway, LLC*, No. DKC 13-1265, 2013 WL 6909156, at *4 (D. Md. Dec. 31, 2013) (quoting *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005)).

Defendants argue that Plaintiffs have failed to state a plausible FDCPA claim because neither Towd nor SPS is a "debt collector" as defined by the FDCPA.  ECF No. 5 at 13–14.  The FDCPA "defines 'debt collector' as '(1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector.'"  *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), *aff'd*, 582 U.S. 79 (2017) (emphasis omitted) (citing § 1692a(6)).  The definition does not include "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such a person." § 1692a(6)(F)(iii).  Plaintiffs do not allege that their loan was in default before the Note was transferred to Towd.  Therefore, Plaintiffs have failed to adequately allege that Towd was a debt collector under the FDCPA, and the claim fails as a matter of law as to Towd.

To the extent Plaintiffs also intended to bring their FDCPA claim against the loan servicer, SPS, the claim fails for a similar reason.  "It is well-settled law that . . . mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA," *Reyes v. Bank of Am., N.A.*, No. PJM 12-3798, 2013 WL 6012504, at *2 (D. Md. Nov. 12, 2013), "as long as the debt was not in default at the time it was assigned," *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.), *modified on other grounds*, 761 F.2d 237 (5th

Cir.1985).  And as previously explained, Plaintiffs have not alleged that their loan was in default before SPS became the servicer on the loan.  Therefore, Plaintiffs claim against SPS fails as well.

In any event, Plaintiffs cannot establish that Defendants violated § 1692e, which "forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).  Plaintiffs fail to make plausible how Defendants made "false, deceptive, or misleading" representations.  § 1692e. Instead, the Complaint merely recites the statutory provision in conclusory fashion, and generally alleges that Defendants failed to demonstrate that they "are a bona fide holder of a debt instrument to which Plaintiffs are liable."  ECF No. 1 ¶¶ 41–50.  But Plaintiffs' "confusion regarding [Defendants'] authority to foreclose does not give rise to an FDCPA claim."  *Bolden*, 2013 WL 6909156, at *5; s*ee also Hill v. Wilmington Fin., Inc.*, No. 13-524-RWT, 2013 WL 4659704, at *4 (D. Md. Aug. 29, 2013) (finding plaintiff's allegations regarding proof of ownership insufficient to support an FDCPA claim).

Last, the public record makes clear that Towd was the holder of the Note, ECF No. 5-6 at 2.  Accordingly, Towd could not have made any material misrepresentations in that regard.  *See Ukaegbu v. Select Portfolio Servicing, Inc.*, No. PWG-16-3415, 2017 WL 2930465, at *8 (D. Md. July 7, 2017) (finding that the plaintiff failed to state a claim under § 1692e because defendant's representation that it was the note holder "was not 'false, deceptive, or misleading,'").  The FDCPA claim, therefore, fails and must be dismissed.

### B.    Negligence (Count Two)

Defendants argue that Plaintiffs' negligence claim fails principally because Plaintiffs "cannot establish that Defendants owed them a duty of care as a matter of law."  ECF No. 5 at 16.  But the claim fails for a more fundamental reason.  Plaintiffs allege that Defendants acted

negligently when they "made false representations to Plaintiffs demanding payment on a debt." ECF No. 1 ¶ 54.  Plaintiffs aver that in making this demand, Defendants acted "without agency." *Id.* ¶ 59.  Although these allegations are vague, they ultimately rely on the discredited theory that Defendants may not be the "true holder" of the Note.  *Id.* ¶ 17.  Indeed, Plaintiffs aver earlier in the Complaint that "[c]urrent practices concerning consumer mortgages wherein the promise to pay (note) is immediately sold into an investment pool . . . then pieces are sold back and forth between parties leaves the true holder of the note in question."  *Id.*  As previously explained, Plaintiffs lack standing to challenge the propriety of assignments of the Note.  *See Mancho*, 2023 WL 2035928, at *4; *see also Suss v. JP Morgan Chase Bank, N.A.*, No. WMN-09-1627, 2010 WL 2733097, at *5 (D. Md. July 9, 2010) (holding that assignments made through MERS are valid).  The Plaintiffs cannot base their negligence claim on the same flawed legal theories.  Thus, the claim must be dismissed.

Moreover, as Defendants argue, to state a common law negligence claim, the Complaint must make plausible that Defendants owed a duty of care to Plaintiffs, that Defendants breached that duty, and that the breach was the proximate cause of the alleged injuries to Plaintiffs. *Barclay v. Briscoe*, 427 Md. 270, 292 (2012); ECF No. 5 at 15.  "[W]hen analyzing a negligence action[,] it is customary to begin with whether a legally cognizable duty exists," *Pendleton v. State*, 398 Md. 447, 461 (2007), because "absent that duty, there can be no negligence," *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 627 (1986).  And "[i]t is well established under Maryland negligence law that, under most circumstances, a lender does not owe a duty to a borrower." *Ramirez v. Wells Fargo Bank, N.A.*, No. PWG-14-3819, 2015 WL 5052787, at *2 (D. Md. Aug. 25, 2015).

The Complaint also does not make plausible any specific duty of care that Defendants owed to Plaintiffs.  *See* ECF No. 1 ¶¶ 51–60.  Maryland law recognizes four "special circumstances" that may create a tort duty between a bank and its customer: where the lender "(1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by [the borrowers] if there were any lien actions pending." *Donnelly v. Branch Banking & Tr. Co.*, 91 F. Supp. 3d 683, 695 (D. Md. 2015) (quoting *Parker v. Columbia Bank*, 91 Md. App. 346, 370–71 (1992)).  Accordingly, the negligence claim must be dismissed.

### C.  Fraud (Count Three)

Defendants next argue that Plaintiffs have failed to plead their fraud claim with sufficient particularity under Rule 9(b).  ECF No. 5 at 21–22.  The Court agrees.  However, this claim, too, fails for a more basic reason.  The Complaint alleges that Defendants fraudulently "concealed the securitization" of the Loan and "the terms of the securitization Agreements."  ECF No. 1 ¶ 62.  Plaintiffs further allege that "Defendants knew or should have known that had the truth been disclosed, Plaintiffs would not have entered into the loans." *Id.* ¶ 65.

To make plausible a fraudulent concealment claim, the Complaint facts must reflect that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 628 (D. Md. 2013) (emphasis omitted); *Green v. H & R Block, Inc.*, 355 Md. 488, 525 (1999).  "A fact is material if (1) its existence or nonexistence is a matter to which a

reasonable man would attach importance in determining his choice of action in the transaction, or (2) the maker of the representation knows that its recipient is likely to regard the fact as important although a reasonable man would not so regard it." *Brodsky v. Hull*, 196 Md. 509, 515–16 (1950).

Fatal to this claim is that the allegedly concealed fact -- securitization of the Note -- is simply not material. This is so "because securitization of a mortgage does not affect the terms and obligations of the underlying mortgage" and so the failure to disclose that fact to Plaintiffs is of no moment regarding the parties' respective obligations under the Loan. *Suggs v. M & T Bank*, 230 F. Supp. 3d 458, 464 (E.D. Va.), *aff'd sub nom.*, 694 F. App'x 180 (4th Cir. 2017). Accordingly, the supposedly concealed fact of securitization is simply not capable of influencing a reasonable person in the Plaintiffs position.[5] The fraud claim will be dismissed.

### D.   Slander of Title (Count Four)

Plaintiffs allege that Defendants have "disparaged Plaintiffs' exclusive valid title" by "preparing, posting, publishing, and recording . . . the Notice of Default, Notice of Trustee's Sale, and Action to Foreclose documents." ECF No. 1 ¶ 77.   In an action for slander of title, the Complaint must make plausible that the defendant "with malice, published a known falsity to a third party that caused special damages." *Gibbons v. Bank of Am. Corp.*, No. JFM–08–3511, 2012 WL 94569, at *10 (D. Md. Jan. 11, 2012).   Defendants argue that "Plaintiffs cannot plausibly allege that Defendants (or the substitute trustees), published a 'known falsity'" as required to state a claim. ECF No. 5 at 24.  And indeed, Plaintiffs are required to plead more

---

[5] Alternatively, to the extent the Plaintiffs claim that this misrepresentation dated back to the Loan origination in 2006, the claim is barred by Maryland's three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see also Parker*, 179 F. Supp. 3d at 518 (observing that "even if Plaintiff could theoretically cobble together a justiciable fraud claim based on information that was withheld at the time of the loan transaction, such a claim would presumably be time-barred" under Maryland's statute of limitations for civil claims").

than simply "disparaging innuendo, as in defamation." *Beane v. McMullen*, 265 Md. 585, 608 (Md. 1972).  Because "[t]here is no presumption, as in the case of personal slander, that the disparaging statement is false . . . the plaintiff must establish its falsity as a part of his cause of action."  *Id.*  Further, Plaintiffs must "establish that the publication 'played a material and substantial part in inducing others not to deal with [them], and that as a result [they] ha[d] suffered special damage.'"  *Bell*, 2019 WL 339645, at *7 (quoting *Redmonds Enter., Inc. v. CSX Transportation, Inc.*, No. CCB-16-3943, 2018 WL 3611049, at *4 (D. Md. July 27, 2018)).

The Complaint does not make plausible that Defendants published a "known falsity" because the Deed expressly authorized foreclosure actions, and nothing suggests that Plaintiffs were not behind on their mortgage payments.  *Parker*, 179 F. Supp. 3d at 519; *see also Simmons v. Bank of Am., N.A.*, No. PJM 13-0733, 2014 WL 509386, at *5 (D. Md. Feb. 6, 2014) (observing in a similar case that "the Deed of Trust gives the mortgagee or assignee the right to foreclose on the Property" so the Notice of Foreclosure "could hardly be false").  Little more than bare conclusory allegations that slander of title has occurred cannot survive challenge.  *See Brown v. Ocwen Loan Servicing, LLC*, No. PJM 14-3454, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015); *Mickerson v. Am. Brokers Conduit*, No. TDC-17-1106, 2018 WL 1083640, at *5–6 (D. Md. Feb. 28, 2018); *English v. Ryland Mortg. Co.*, No. GJH-16-3675, 2017 WL 3475674, at *7 (D. Md. Aug. 11, 2017).  Therefore, Plaintiffs' slander of title claim is dismissed.

### E.    Declaratory Relief (Count Five)

The Court must also dismiss Plaintiffs' request for declaratory relief.  The Complaint requests a judicial determination of (1) the "rights, obligations and interests of the parties" as to the property; (2) whether any defendant, or any 'Substitute Trustee' has authority to foreclose on

the subject property"; and (3) "a judgment that Plaintiffs own the property in fee simple."  ECF No. 1 ¶¶ 91–92, 95.

The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration."  The purpose of issuing such a judgment is to clarify and settle the legal relations between the parties.  A declaratory judgment should be issued when "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

Federal courts issue declaratory judgments only in cases that meet the constitutional "case or controversy" requirement and present a valid basis for subject matter jurisdiction.  *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001 (D. Md. 1985).  Generally, the presence of a case or controversy depends on whether the facts alleged show a controversy "of sufficient immediacy and reality to warrant issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Even where a declaratory judgment request meets both requirements, the district court, in its discretion, must be satisfied that declaratory relief is appropriate.  *See White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 168 (4th Cir. 1990) (citing *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331 (1961)); *Glenmont Hill Associates v. Montgomery Cnty.*, 291 F. Supp. 2d 394, 397 (D. Md. 2003) ("[W]hile a federal court is authorized to issue a declaratory judgment, it is not obligated to do so.").

The same deficiencies that plague Plaintiffs' other claims render imposition of declaratory judgment impossible.  Plaintiffs' allegations are also "too vague and threadbare for the Court to render a declaration with respect to the parties' rights that would resolve a dispute or

14

otherwise serve a useful purpose." *Simmons*, 2014 WL 509386, at *7 (dismissing a claim for declaratory relief under similar circumstances).  Mere averments that the respective rights of the parties are in need of judicial determination does not provide a sufficient factual predicate for proceeding on the request for Declaratory Judgment.  Therefore, Plaintiffs' request is denied.

### F.    Rescission (Count Six)

Finally, Plaintiffs maintain that they are entitled to rescission of the Loan to remedy "1) FDCPA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent concealment; 4) Fraudulent Inducement; 5) Making illegal or fraudulent transfers of the note and deed of trust and 6) Public Policy grounds."  ECF No. 1 ¶ 98–101; *see also* ECF No. 1-2 at 9 (emphasis omitted) (report alleges that the "Lender has never provided Borrower with true, complete, accurate or timely documents").  The Complaint also avers that Defendants' failure to make certain disclosures in violation of TILA entitles them to recission.  *Id.*

Starting with TILA's requirements, the statute provides that "if the borrower gives the lender a security interest in the borrower's home, the borrower may rescind, for any reason, within three business days from either the closing or the delivery of forms containing 'material disclosures.'" *Lavis v. Reverse Mortg. Sols., Inc.*, 40 F.4th 181, 183 (4th Cir. 2022) (citing § 1635(a)).  If a lender fails to provide the borrower with these required disclosures, however, "the time to rescind is extended to 'three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first.'" *Id.* (citing § 1635(f)).

It is undisputed that Plaintiffs obtained their home mortgage loan on June 2, 2006.  ECF No. 5-1 at 2.  Therefore, the deadline for recission based on a violation of TILA has long since expired.  *See Brown v. Wilmington Fin.*, No. CCB-11-699, 2012 WL 975541, at *4 (D. Md. Mar. 21, 2012) (rejecting request for rescission under TILA as untimely); *see also Jones v. Saxon*

*Mortg., Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) (explaining that § 1635(f) "is a statute of repose" so the stated time limit "is typically not tolled for any reason").

As to the remaining grounds, and without wading into the propriety of recission for each ground stated, the Court notes only that because the underlying claims fail as a matter of law, the recission request too must fail.  Recission of a contract may be available "'only for a substantial breach tending to defeat the object of the contract.'" *Maslow v. Vanguri*, 168 Md. App. 298, 324 (2006) (quoting *Vincent v. Palmer*, 179 Md. 365, 373–374 (1941)).  By contrast, "'substantial performance under a contract permits the recovery of damages,'" rather than rescission.  *Id.* (quoting *Traylor v. Grafton*, 273 Md. 649, 687 (1975)).  Likewise, when a party learns that they have been induced into a contract by fraud, the party may choose to rescind the contract. *Sonnenberg v. Sec. Mgmt. Corp.*, 325 Md. 117, 124–25 (1992).  This means however, that a recission claim depends wholly on the sufficiency of the underlying causes of action, whether it be substantial contractual breach, or a contract procured by fraud.  But none of Plaintiffs' claims survive challenge.  Thus, the recission claim, too, must be dismissed.

## IV.    Dismissal With or Without Prejudice

The Court turns lastly to whether the claims should be dismissed with prejudice, as Defendants urge.  ECF No. 4 at 1; ECF No. 5 at 30–31.  Whether to dismiss claims with or without prejudice remains well within the district court's discretion.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985).  Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice.  *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013).  However, if amendment to the pleadings would be futile, dismissal with prejudice is

16

warranted.  *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (finding district court did not abuse discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

The Court agrees with Defendants that because the claims rest on flawed securitization and loan assignment theories, amendment is futile.  *See* ECF No. 5 at 30.  The Court cannot see how amendment could cure these defects.  Indeed, even though Plaintiffs obliquely request leave to amend their Complaint (ECF No. 10 at 4–5), they make no showing as to how amendment could save any of the claims.  Thus, the Complaint will be dismissed with prejudice.

**V.      Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and DENIES Plaintiffs' motion for leave to amend.  A separate Order follows.


December 11, 2023                                              _____/s/_____
Date                                                                    Paula Xinis
                                                                           United States District Judge

17